IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,
  Plaintiff,

v.           Case No. 2:18-CR-248
             JUDGE EDMUND A. SARGUS, JR.

MARK CALDWELL,
  Defendant.

## OPINION AND ORDER

This matter arises on Defendant Mark Caldwell's initial and supplemental motions for compassionate release. (ECF Nos. 46, 50.) For the reasons stated herein, Mr. Caldwell's motions are **DENIED**. (*Id.*)

### I.

On November 29, 2018, Mr. Caldwell pled guilty to (1) possessing multiple firearms as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) ("Count One") and (2) possessing with the intent to distribute at least 14.7 grams of a mixture containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) ("Count Two"). (Plea Agreement, ECF No. 22.) These convictions ultimately led this Court to sentence Mr. Caldwell to 100 total months of imprisonment, followed by three years of supervised release. (Judgment, ECF No. 38.) In imposing this sentence, the Court set Mr. Caldwell's prison term to begin on March 30, 2017. (*Id.*) Five years have passed since that date. Per the Bureau of Prisons ("BOP"), Mr. Caldwell, who is now forty-eight years old, is scheduled to be released on May 11, 2024.

On November 12, 2021, Mr. Caldwell, proceeding *pro se*, filed his initial motion for compassionate release. (ECF No. 46.) Subsequently, the Court appointed CJA counsel to

1

represent Mr. Caldwell. Thereafter, on March 17, 2022, Mr. Caldwell, through counsel, filed a supplemental motion for compassionate release. (ECF No. 50.) Fourteen days later, on March 31, 2022, the government responded in opposition to both of Mr. Caldwell's motions. (ECF No. 51.)

**II.**

Since Congress passed the Sentencing Reform Act of 1984, federal law has authorized courts to reduce the sentences of federal prisoners who face extraordinary health concerns and/or other hardships. *See United States v. Ruffin*, 978 F.3d 1000, 1003 (6th Cir. 2020); *see also* Pub. L. No. 98–473, ch. II(D) § 3582(c)(1)(A), 98 Stat. 1837 (1984). Until 2018, only the Director of the BOP could properly move a district court to grant such a reduction. *Id.* The passage of the First Step Act of 2018 now enables federal inmates to move for their compassionate release where, as here, the BOP refuses to do so. 18 U.S.C. § 3582(c)(1)(A) (allowing defendants to bring a motion for compassionate on their own after they have either (1) "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [their] behalf," or (2) allowed thirty days to pass since the transmission of their motion to the warden of their respective facility, whichever is sooner).

District courts, upon review of a properly filed motion for compassionate release, generally must engage in a three-step inquiry. *See Ruffin*, 978 F.3d at 1004. Step one of this endeavor requires courts to identify whether any "extraordinary and compelling reasons" support a defendant's sought-after sentence reduction. *Id*. If so, they must next determine whether "such a reduction is consistent with applicable policy statements issued by the [United States] Sentencing Commission." *Id.* at 1005. After that, they must finally ascertain whether the "applicable" sentencing factors set forth in 18 U.S.C. § 3553(a) warrant in favor of granting the defendant's requested reduction. *Id.*

Several aspects of this analysis are of note. As an initial matter, and as Mr. Caldwell points out, district courts wield "full discretion" to determine whether the basis of a motion for compassionate release is "extraordinary and compelling" when that motion is filed by an incarcerated person. *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020). Such is the case here. To that end, this Court has the authority to "skip step two" of the compassionate release inquiry entirely. *Id.* And at step three, this Court still wields "substantial discretion" to grant Mr. Caldwell's request. *Ruffin*, 978 F.3d at 1005. Thus, even if "extraordinary and compelling reasons" underpin Mr. Caldwell's motions, this Court may nevertheless decline to reduce his sentence if it finds that the "applicable" parts of § 3553(a) do not militate in his favor. *Id.*

### III.[1]

It is undisputed that Mr. Caldwell has exhausted his administrative remedies in applying for compassionate release. Accordingly, his motions are ripe for this Court's review. *See* 18 U.S.C. § 3582(c)(1)(A).

Mr. Caldwell seeks to serve out the remainder of his prison sentence on home confinement for two general reasons. Principally, he focuses on the multiple comorbidities (*e.g.*, his history of cancer, diabetes, and renal impairment) which render him highly vulnerable to the COVID-19 virus. He also highlights his desire to care for his eighty-year-old parents and son, the latter of whom, he submits, has recently been placed into foster services.

These circumstances are certainly moving. Ultimately, however, multiple mitigating factors preclude this Court from finding any "extraordinary and compelling" reason to reduce Mr. Caldwell's term of imprisonment. Thus, Mr. Caldwell's motions do not survive step one of the "compassionate release" analysis.

---

[1] Due to their substantive similarity, the Court addresses Mr. Caldwell's motions simultaneously.

**A. Health Conditions**

Mr. Caldwell notes, and his medical records reflect, that he has traversed numerous health conditions, including non-Hodgkin's lymphoma, type two diabetes, and hypertension—conditions which all appear to be in remission. (ECF No. 50-3 at PageID #238.) Mr. Caldwell's records also demonstrate (1) that he is missing a kidney and his spleen and (2) that he suffers from asthma. (*Id.*) Pointing to this cacophony of health issues, as well as the ongoing spread of COVID-19, Mr. Caldwell submits that he is exceptionally likely to suffer from severe disease should he remain incarcerated. And this risk, he asserts, constitutes an "extraordinary and compelling" reason to terminate his prison sentence.

The government does not contest the existence of Mr. Caldwell's health concerns. Nevertheless, it also does not believe that Mr. Caldwell's comorbidities, in the aggregate, constitute a sufficient basis to reduce his sentence, given that he (1) has already contracted and recovered from the COVID-19 virus without suffering any severe complications; and (2) as of October 26, 2021, is fully vaccinated (with one booster shot). (ECF No. 51.) The Court agrees.

Mr. Caldwell's health issues are undoubtedly serious. Several, as he notes, have been recognized by the Center for Disease Control (CDC) to place him at a higher risk of suffering severe, COVID-19-related disease.[2] Nevertheless, this risk is "substantially" mitigated by Mr. Caldwell's continuing access to COVD-19 vaccines. *United States v. Lemmons*, 15 F.4th 747, 751 (6th Cir. 2021); *see also* CDC, *COVID-19 Vaccines Work* (updated Dec. 23, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html. Moreover, at this juncture, there does not appear to be any ongoing cases of COVID-19 within Mr. Caldwell's prison

---

[2] See CDC, *People with Certain Medical Conditions* (updated Feb. 25, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?msclkid=3da5f4d0b68511eca6c50b79fc7a9780 (acknowledging that a "history of cancer," type two diabetes, and chronic kidney disease can all raise an individual's risk of suffering a severe COVID-related outcome).

4

facility. *See* Bureau of Prisons, *COVID-19 Cases* (last updated April 7, 2022), https://www.bop.gov/coronavirus/. Thus, at present, his baseline risk of re-infection appears to be low.

An "extraordinary and compelling" reason for release must go "beyond what is usually, customary, regular, or common" and be "so great that irreparable harm or injustice would result if the [petitioner's requested] relief is not granted." *E.g., United States v. Boatwright*, No. 06-20099, 2020 WL 6871003, at *2 (W.D. Tenn. Nov. 23, 2020). Mr. Caldwell's health conditions, in light of the above, do not cross this threshold. *See United States v. Traylor*, 16 F.4th 485, 487 (6th Cir. 2021); *Lemmons*, 15 F.4th at 751. Thus, to the extent those conditions form the basis of Mr. Caldwell's overarching request for compassionate release, they are insufficient.

### B. Family Circumstances

Mr. Caldwell additionally cites his desire to care for his elderly parents and son as a basis for his release. (ECF No. 46 at PageID #134.) These, too, do not constitute "extraordinary and compelling" reasons to shorten his term of imprisonment.

The United States Sentencing Commission has observed that "[t]he death or incapacitation of the caregiver of [a] defendant's minor child or minor children" may justify the reduction of that defendant's term of imprisonment. United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 app. note 1(C). "Under this policy statement, '[c]are of parents is not a qualifying basis for early release.'" *United States v. Hill*, Case No. 1:20CR0425, 2022 WL 122639, at *2 (N.D. Ohio Jan. 13, 2022) (citation omitted). And while this Court may disregard this policy statement in computing the sufficiency of Mr. Caldwell's rationale for release, the fact remains that "[m]any, if not all inmates, have aging and sick parents." *Id.* (citation omitted). Accordingly, Mr. Caldwell's

5

desire to care for his elderly parents "is not extraordinary"—and, thus, is not a sufficient basis for relief. *Id.*

Likewise, Mr. Caldwell's desire to care for his son, while certainly commendable, "is also not an extraordinary and compelling reason meriting his early release." *Id.* An inmate's inability to care for his or her child is, unfortunately, a "problem faced by many convicted defendants." *Id.; accord United States v. Kibby*, No. 2:19-CR-179, 2021 WL 2009568, at *3. In that regard, the placement of Mr. Caldwell's child into foster care—as upsetting as it may be—arguably does not, by itself, constitute an "extraordinary" reason to grant him early release. *See United States v. Altiery*, No. 2:13-CR-00041-1-JRG, 2021 WL 5407671, at *6 (E.D. Tenn. Nov. 18, 2021); *Kibby*, 2021 WL 2009568, at *3. Even if it did, it remains unclear to this Court whether Mr. Caldwell would be legally or logistically able to regain custody of his son. Nor is it necessarily clear that Mr. Caldwell's child—who he offers virtually no details about—actually entered (or remains in) foster care at all. (*See* ECF No. 46 at PageID #134.)

For these reasons, Mr. Caldwell's familial concerns do not, at this time, pass muster under the "extraordinary and compelling" framework.

**IV.**

As set forth above, Mr. Caldwell's motions do not survive the first step of the "compassionate release" analysis. And even if they did, it is, in brief, highly uncertain whether the balance of all applicable § 3553(a) factors militate in his favor.[3] To that end, and in light of the foregoing, Mr. Caldwell's motions for compassionate release are **DENIED**. (ECF Nos. 46, 50.)

**IT IS SO ORDERED.**

---

[3] This is particularly so given (1) the seriousness of Mr. Caldwell's drug and firearm offenses and (2) Mr. Caldwell's fairly extensive criminal history, which includes multiple crimes of violence.

6

<u>**8/8/2022**</u>                          <u>**s/Edmund A. Sargus, Jr.**</u>
**DATE**                                       **EDMUND A. SARGUS, JR.**
                                               **UNITED STATES DISTRICT JUDGE**